UNITED STATES DISTRICT COURT     O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| SAMUEL GARCIA, *et al*, § <br> § <br> Plaintiffs, § <br> VS. § <br> § <br> GEOVERA SPECIALTY INSURANCE § <br> COMPANY, § <br> § <br> Defendant. § | CIVIL ACTION NO. 7:13-CV-114 |

## ORDER

Pending before the Court is the self-styled "Motion to Remand"[1] filed by Plaintiffs Samuel and Marisela Garcia (collectively, "Plaintiffs"). Defendant Geovera Specialty Insurance Company ("Geovera") has filed a response in opposition ("Response").[2] After considering the motion, response, record, and relevant authorities, the Court **DENIES** the motion to remand.

I. **BACKGROUND**

On February 10, 2013, Plaintiffs filed suit in state court, asserting that Geovera had violated the terms of a property insurance policy with regard to a hailstorm claim.[3] Geovera was served with citation on or about February 15, 2013, and filed its answer in state court on March 5, 2013.[4] Geovera thereafter removed the case to this Court on March 12, 2013, asserting subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1446.[5]

On April 11, 2013, Plaintiffs filed the instant motion to remand, asserting that the requirements of diversity jurisdiction were not satisfied due to an insufficient amount in

---

[1] Dkt. No. 7 ("Motion to Remand").
[2] Dkt. No. 8 ("Response").
[3] Dkt. No. 1, Attach. 3 ("Petition").
[4] Dkt. No. 1, Attach. 5.
[5] Dkt. No. 1 ("Notice of Removal").

controversy. In response, Geovera expounded upon its removal position, specifically that the amount in controversy exceeds the jurisdictional threshold.

## II. DISCUSSION

Section 1332 of Title 28 of the United States Code provides that the Court has original jurisdiction of an action where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states . . . ."[6] Neither party disputes that the diversity-of-citizenship requirement is met. Instead, Plaintiffs solely challenge the sufficiency of the amount in controversy.

Consistent with the sensitivity to the federalism concerns raised by removal,[7] the Court strictly construes the removal statute and "any doubt as to the propriety of removal should be resolved in favor of remand."[8] Recent revisions to 28 U.S.C. § 1446 now provide the primary framework for the Court's analysis, which was previously guided by case law. Nevertheless, the statutory provisions are largely consistent with pre-revision precedent, and the Court therefore looks to that precedent where the statute is silent.

### A. Plaintiffs' Statement of Damages

In his original petition, Plaintiffs do not include a specific damages amount and instead states that "[p]laintiffs seek damages, inclusive of attorney fees, in an amount not exceeding $75,000."[9] In their motion to remand, Plaintiffs heavily rely upon this representation.[10] Under § 1446(c)(2), where removal is sought on the basis of diversity under §1332, "the sum demanded

---

[6] 28 U.S.C. 1332(a)(1); In re 1994 Exxon Chemical Fire, 558 F.3d 378, 387 (5th Cir. 2009).
[7] Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995) (citing Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 809 (1986)).
[8] Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008) (quoting In re Hot-Hed, Inc., 477 F.3d 320, 323 (5th Cir. 2007) (internal quotations omitted).
[9] Petition at ¶ 23.
[10] See Motion to Remand at II(A).

in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ."[11] The good-faith requirement for a controlling amount in controversy is consistent with Fifth Circuit precedent in *De Aguilar v. Boeing Co.* ("*De Aguilar II*"), which noted that "the [amount-in-controversy] inquiry, however, does not end merely because the plaintiff alleges damages below the threshold. The face of the plaintiff's pleading will not control if made in bad faith." [12] In addition to the good-faith requirement, the statute also provides that the demand in the pleading will not control if "the State practice . . . does not permit demand for a specific sum . . . ."[13] Notably, while § 1446 speaks to the violation of a specific-damages prohibition as an exception, but is largely silent about the determination of bad faith,[14] the *De Aguilar II* Court recognized the former as evidencing the latter, writing:

> These new [state-law] rules [prohibiting plaintiffs "from pleading for specific amounts in cases of unliquidated damages"] have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading. Such manipulation is surely characterized as bad faith.[15]

As recognized by the *De Aguilar II* Court, Plaintiffs' allegations violated Texas law, which prohibited plaintiffs from alleging a specific dollar amount of damages at the time the petition was filed.[16] These considerations inform the Court's opinion that, instead of pleading a

---

[11] 28 U.S.C. § 1446(c)(2).
[12] 47 F.3d 1404, 1408 (5th Cir. 1995).
[13] 28 U.S.C. § 1446(c)(2)(A)(ii).
[14] The Court recognizes that the statute describes one scenario where an act is deemed bad faith, but the statute neither describes that scenario as exclusive, nor provides any other rubric for bad-faith determination. *See* 28 U.S.C. §1446(c)(3)(B) (providing that "[i]f the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).").
[15] *De Aguilar II*, 47 F.3d at 1410.
[16] *See* TEX. R. CIV. P. 47(b) ("An original pleading which sets forth a claim for relief . . . shall contain . . . in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court . . . ."). *See also De Aguilar II*, 47 F.3d at 1412 (quoting Rule 47(b) and describing violation through plaintiffs' allegation of specific damages). Although Rule 47(b) has since been revised to allow greater specificity of damages pleading, the revisions were only effective on March 1, 2013, well after the date that the petition was filed in this case.

legitimate estimation of damages in this case, "[a]s a functional matter, plaintiff[] [is] attempting to avoid federal jurisdiction."[17] As a result, the allegations fall within the statutory exception and precedential definition of "bad faith," and the Court finds that the amount demanded in the complaint does not control the analysis.

### B. Defendant's Showing of Damages

In the event that the initial pleading does not control, § 1446(c)(2)(B) provides that removal is proper where a sufficient amount in controversy is supported by a preponderance of the evidence.[18] The statute, however, does not define the preponderance-of-the-evidence standard in this specific context and, again, the Court turns to pre-codification precedent. Describing the preponderance-of-the-evidence showing for the amount in controversy, the Fifth Circuit in *St. Paul Reinsurance Co., Ltd. v. Greenberg* wrote that "[t]he test is whether it is more likely than not that the amount of the claim will exceed [the jurisdictional threshold]."[19] Accordingly, the Court begins its analysis by considering whether Defendant's evidence supports a finding that the amount in controversy will "more likely than not" exceed the jurisdictional threshold.

As support for removal, Defendant provides the following evidence: (1) policy limits and (2) discovery documentation attached to the petition.

<u>Policy Limits.</u> In determining the amount in controversy relative to coverage under an insurance policy, the Fifth Circuit in *Harford Ins. Group v. Lou-Con, Inc.*,[20] defined the "object

---

[17] *De Aguilar II*, 47 F.3d at 1408.
[18] 28 U.S.C. § 1446(c)(2)(B) (providing that "removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).").
[19] 134 F.3d 1250, 1254, n.13 (5th Cir. 1998) (considering removal under $50,000 jurisdictional threshold) (citing Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)).
[20] 293 F.3d 908 (5th Cir. 2002) (declaratory action).

of the litigation" as the "value of the right to be protected."[21] Geovera first directs the Court's attention to the monetary limits of the policy under which Plaintiffs are bringing this action.[22] Those limits comprise $132,000.00 in dwelling coverage, $13,200.00 in other-structures coverage, and $66,000.00 in personal-property coverage, and $26,400.00 in loss-of-use coverage; a combined total of $237,600.00.[23] As a result, the insurance policy implicates an amount in controversy well-above the jurisdictional threshold, and this policy forms the contractual basis for Plaintiffs' breach of contract claim.

The *Hartford* Court went on, however, to specify that the amount in controversy is more accurately reflected by the value of the claim.[24] On this basis, Plaintiffs argue that their single, breach-of-contract claim indicates a lower amount in controversy.[25] This argument fails for two reasons. First, absent any limitation by Plaintiffs, the breach-of-contract claim facially implicates the limits of the policy which forms the basis of the claim. Second, this nominal assertion of a breach-of-contract claim is belied by two aspects of Plaintiffs' original petition: (1) Plaintiffs' selection of a discovery control plan which indicates both a larger amount in controversy and a complexity beyond a mere contract dispute, consistent with Plaintiffs' representation that "[t]his case involves complex issues and will involve extensive discovery;"[26] and (2) Plaintiffs' discovery requests, incorporated into the original petition, for extra-contractual information

---

[21] *Hartford*, 293 F.3d at 911.
[22] *See* Notice of Removal at ¶ 9; *see also* Response at ¶ 9.
[23] Dkt. No. 1, Attach. 1. The Court notes that the original petition requires the Court to aggregate the policy limits for all coverage types. Paragraph 11 of the original petition provides: "Plaintiffs asked that Defendant cover the cost of repairs to the Property pursuant to the Policy *and any other available coverages under the Policy*." [emphasis added].
[24] *Hartford*, 293 F.3d at 911(holding that, where the claim involves the applicability of the insurance policy to a particular occurrence, "the jurisdictional amount in controversy is measured by the value of the underlying claim.").
[25] *See* Motion to Remand at II(C).
[26] *See* Petition at A. "Level 3"-discovery under Texas Rule of Civil Procedure 190.4, the level selected by Plaintiffs, is designed for complex cases involving greater damages and discovery than could be easily accommodated by the lower-level discovery control plans. In contrast, "Level 1"-discovery under Rule 190.2 is designed for cases involving monetary relief of $50,000 or less, and presumptively lower amounts of oral depositions.

about Geovera's operational policies since 2007.[27] As a result, while the breach-of-contract claim alone implicates an amount above the jurisdictional threshold, Plaintiffs' pleading further implicates additional, extra-contractual claims.

Plaintiffs also attempt to establish a lower amount in controversy by citing to Geovera's estimate of damages.[28] In the first instance, the estimate is based on an inspection conducted on December 7, 2012, two months prior to the filing of the original petition;[29] this removal in time diminishes its evidentiary value regarding the amount in controversy "at the time of removal."[30] Moreover, Plaintiffs reinforce the Court's concern about the estimate's accuracy, expressly alleging in the original petition that "Defendant's adjuster and Defendant failed to properly adjust the claims and Defendant has denied at least a portion of the claims without an adequate investigation."[31] Plaintiffs' disagreement with the estimate further reveals that their argument misapprehends the concept of "amount in controversy." While jurisprudence has refined and qualified its application in different contexts, the idea fundamentally embodies the amount about which the parties disagree, i.e. the "object *of the litigation*" or the "value of the right *to be protected*."[32] At most, the Defendant's estimate only sets the lower limit of any potential amount in controversy because, presumably, no controversy would exist if Plaintiffs agreed with the Defendant's estimate. Therefore, the amount in controversy is book-ended by the Defendant's estimate of $5,395.57 and the policy limits of $237,600.00, a range of fully $232,204.43.

---

[27] *See, e.g.,* Petition at I(5) ("Your written procedures or policies (including document(s) maintained in electronic form) that pertain to the handling of windstorm and hail claims in Texas from February 10, 2007 to present . . . .") & (6) ("Your written procedures or policies (including document(s) maintained in electronic form) in place from February 10, 2007 to present that pertain to the handling of complaints made by policyholders in Texas . . . .").
[28] Motion to Remand at II(B) (citing to Exhibit B).
[29] *See* Motion to Remand, Exhibit B.
[30] *See* Lee v. Empire Ins., *et al*, 2009 WL 2160437 (E.D. La. 2009) (disregarding estimate as not reflective of the amount in controversy "at the time of removal" since it was made nine months after the original complaint was filed).
[31] Petition at ¶ 14.
[32] *Hartford*, 293 F.3d at 911 (emphasis added).

At this point, the Court emphasizes the glaring absence of any damages-estimate by Plaintiffs. In determining where the amount in controversy falls within the above range, the Court notes that neither party has submitted a demand letter or an estimate by Plaintiffs. Combined with Plaintiffs' vague, jurisdictionally-sensitive pleading of damages in their state-court petition, this apparent avoidance of any affirmative statement of damages reeks of the "abusive manipulation" rejected by the *De Aguilar II* Court, a hide-the-ball chicanery that is the type of "tactical manipulation" which the Fifth Circuit previously cautioned "cannot . . . be condoned."[33]

In light of the ambiguous pleading, the policy limits of $237,600.00, the claim directly asserted in the petition and those implied by both the state-court discovery level and the attached discovery requests, the Court finds that Geovera has shown it is more likely than not that the amount in controversy is in excess of $75,000.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Geovera has established a jurisdictionally-sufficient amount in controversy by a preponderance of the evidence. The statutory requirements for the Court's subject matter jurisdiction are satisfied and, accordingly, Plaintiffs' motion to remand is **DENIED**.

IT IS SO ORDERED.

DONE this 10th day of May, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[33] Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985).